IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02779-RM-MEH

SHARON ETCHIESON,

    Plaintiff,

v.

SYKES ENTERPRISES, INC,
ALPINE ACCESS, INC.,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants' Partial Motion to Dismiss Plaintiff's Colorado State Law Claims in First Amended Complaint [filed January 26, 2017; ECF No. 27]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the Honorable Raymond P. Moore referred the matter to this Court for recommendation.[1] ECF No. 28. The Motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. Defendants' Motion asks the Court to

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kan. Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

determine whether Defendant Sykes Enterprises, Inc. ("SEI") is subject to the Colorado Minimum Wage Order ("CMWO"). The Court finds that Plaintiff has sufficiently alleged facts demonstrating that SEI is in the commercial support services industry, as defined by the CMWO.[2] Therefore, the Court respectfully recommends that the District Court deny Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiff initiated this lawsuit on November 15, 2016. *See* Compl., ECF No 1. Plaintiff's claims arise from SEI's alleged failure to pay proper wages during Plaintiff's employment with SEI.

**I.   Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in her Amended Complaint, which the Court takes as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

SEI provides customer support services for many well-known global companies. Am. Compl. ¶ 18, ECF No. 21. SEI employs approximately 41,700 customer service representatives in its call centers, and an additional 7,500 at-home agents. *Id.* at ¶ 3. Each of these employees has essentially the same job duties—providing customer support to individuals over the telephone. *Id.*

SEI employed Plaintiff as an at-home customer service representative from September 2013 to March 2015, and again from June 2015 to August 2015. *Id.* at ¶ 17. In her capacity as an at-home agent, Plaintiff accessed sales records and downloaded customer information from several secure

---

[2] In August 2012, SEI purchased Defendant Alpine Access, Inc., which made SEI one of the largest call center companies in the world. Am. Compl. ¶ 19, ECF No. 21. For purposes of brevity, and because the Amended Complaint refers to Plaintiff's employer as SEI, the Court will refer to the combined SEI and Alpine Access jointly as "SEI."

servers to assist customers with various issues. *See id.* at ¶ 5. As part of Plaintiff's job duties, she was required to "boot up" her computer and log in to SEI's network. *Id.* at ¶¶ 6–8. Additionally, when Plaintiff's designated shift ended, SEI would log her out of her computer, regardless of whether she had finished her call. *Id.* at ¶ 27. Plaintiff alleges SEI did not properly compensate her (or any other customer service representative) for the time she spent logging into the computer system and finishing customer calls after her designated shift ended. *Id.* at ¶ 8.

## II.     Procedural History

Based on these factual allegations, Plaintiff filed her original Complaint on November 15, 2016. Compl., ECF No. 1. After Defendants filed a Motion to Dismiss, *see* ECF No. 13, Plaintiff filed an Amended Complaint as a matter of course on January 12, 2017. Am. Compl., ECF No. 21. Plaintiff brings four causes of action—two for violations of the Fair Labor Standards Act and two for violations of the CMWO. *Id.* at ¶¶ 62–168.

On January 26, 2017, Defendants responded to the Amended Complaint by filing an Answer and the present Motion. *See* Answer, ECF No. 26; Defs.' Mot. to Dismiss, ECF No. 27. Defendants' Motion argues the Court should dismiss Plaintiff's state-law claims, because SEI is not subject to the CMWO. Defs.' Mot. To Dismiss 5–8. Plaintiff filed a Response on February 16, 2017, which argues that SEI is in the "retail and service" and "commercial support service" industries, as those terms are defined by the CMWO. Pl.'s Response 4–7, ECF No. 31. Defendants filed a Reply in Support of their Motion on March 2, 2017. ECF No. 32.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## **ANALYSIS**

Defendants' Motion asks the Court to determine whether SEI is a covered employer under the CMWO. The CMWO regulates wages, hours, working conditions, and procedures for employees in the following industries: (1) retail and service, (2) food and beverage, (3) commercial support services, and (4) health and medical. 7 Colo. Code Regs. § 1103-1:1. Plaintiff does not

contend SEI is in the food and beverage or health and medical industries. Therefore, the Court must analyze whether SEI is a "commercial support service" or "retail and service" company, as those terms are defined in 7 Colo. Code Regs. § 1103-1:2. The Court will first determine whether SEI is in the commercial support service industry.

7 Colo. Code Regs. § 1103-1:2 defines "commercial support service" as:

> [A]ny business or enterprise engaged directly or indirectly in providing services to other commercial firms through the use of service employees who perform duties such as: clerical, keypunching, janitorial, laundry or dry cleaning, security, building or plant maintenance, parking attendants, equipment operations, landscaping and grounds maintenance. Commercial support service also includes temporary help firms which provide employees to any business or enterprise covered by this Wage Order. Any employee, including office personnel, engaged in the performance of work connected with or incidental to such business or enterprise, is covered by the provisions of this Wage Order.

Defendants argue that SEI is not in the commercial support service industry, because customer service is not one of the listed occupations. Defs.' Mot. 6–8. According to Defendants, "if the Colorado legislature had intended the Wage Order to apply to providers of customer service functions, it would have said so." Defs.' Reply 5. In response, Plaintiff contends SEI is a commercial support company, because it provides services to other companies through the use of service employees. Pl.'s Resp. 6. Additionally, Plaintiff asserts that SEI is subject to the CMWO, because Plaintiff performed clerical and keypunching work similar to the occupations listed in the definition. *Id.* at 4–7.

Although the Court does not find that Plaintiff performed clerical work, the Court agrees that SEI is subject to the CMWO. As currently pleaded, and consistent with the broad protection the CMWO provides, companies operating customer service call centers, such as SEI, are in the commercial support service industry. *See Bowe v. SMC Elec. Products, Inc.*, 945 F. Supp. 1482,

1485 (D. Colo. 1996) ("The MWO itself does not support such a narrow interpretation but reflects an intention to provide broad protection."). First, it is clear that companies to which other firms outsource customer support are "providing services to other commercial firms through the use of service employees . . . ." 7 Colo. Code Regs. § 1103-1:2. Moreover, although the list of occupations in the definition does not specifically name customer support, the Court does not find the list to be exclusive or exhaustive. *See Cartier v. W. Elec. Coordinating Council*, No. 14-cv-0079-WJM-MJW, 2015 WL 3581346, at *5 (D. Colo. June 9, 2015) (stating that the list of occupations in the CMWO's definition for the "commercial support service" industry is not exclusive); *see generally Salazar v. Butterball, LLC*, No. 08-cv-02071-MSK-CBS, 2010 WL 965353, at *11 (D. Colo. Mar. 15, 2010) (stating that the list of examples in the CMWO's definition of the "food and beverage" industry is not exclusive nor exhaustive). Indeed, the statute prefaces the list with the term "such as," which signifies that the list that follows provides non-exhaustive examples. *See generally Cherry Creek Sch. Dist. No. 5 v. Voelker by Voelker*, 859 P.2d 805, 813 (Colo. 1993) ("A statutory definition of a term as 'including' certain things does not restrict the meaning to those items included.").

Therefore, the list provides only a general theme, which demonstrates the type of companies that are part of the industry. The Court finds that the occupations listed in the definition share the common theme of relatively unskilled labor that companies frequently outsource. *Cartier*, 2015 WL 3581346, at *5 (stating that the jobs listed in the commercial support services definition "[a]ll perform relatively low-skilled sorts of work that companies often 'farm out' to vendors").[3]

---

[3] The Court has considered and rejects other potential common themes of the list. The Court does not believe the list characterizes employees who are restricted from exercising any discretion. Indeed, security guards exercise some discretion in the performance of their duties, such as when

The Court finds that as currently pleaded, customer service representatives' job duties are consistent with this general theme of the list. Plaintiff's duties included accessing client data, downloading customer information, and assisting individuals with customer service issues over the telephone. Am. Compl. ¶ 5. SEI controlled Plaintiff's hours to the point that it would log Plaintiff off of her system when her designated shift ended, regardless of whether she had completed her call. *Id.* at ¶ 27. And, although not dispositive to the level of skill required for the position, customer service representatives typically make an hourly wage of between $8.00 and $11.80. *Id.* at ¶ 4. Moreover, SEI is a vendor to which multiple firms outsource their customer support services. *Id.* at ¶ 18 ("SEI provides call center services for a number of well-known global 2,000 companies including AT&T."). Therefore, the Court finds that Plaintiff's duties involved generally unskilled labor that companies often farm out to outside vendors.[4] Accordingly, the Court recommends finding that SEI is subject to the CMWO as part of the commercial support service industry.

Although courts have not extensively considered what occupations are part of the industry, the Court's recommendation is consistent with the holding of at least one other court in this district that has assessed the issue. In *Cartier*, the court analyzed whether a company that is responsible for

---

and how to pursue a potential security threat. Nevertheless, security is specifically listed as a commercial support service. Additionally, the Court does not believe the list is intended to characterize companies that provide services only to another company, and not to the company's customers. Parking attendants interact directly with a company's customers by accepting money, providing change, and permitting customers to park in the company's parking lots. Similarly, if a security issue arises, security guards deal directly with a business' customers by apprehending potential suspects and attempting to de-escalate the situation.

[4] The Court notes that should Defendants come forth with evidence at summary judgment demonstrating that Plaintiff exercised considerably more skill or discretion than she pleads in the Amended Complaint, her state-law claims may be subject to dismissal. However, for purposes of the present Motion, the Court must accept Plaintiff's allegations that indicate her job did not require her to exercise substantial skill.

supervising and maintaining critical portions of the electrical power grid is part of the commercial support service industry. 2015 WL 3581346, at *1. The court described the defendant's employees, who were compensated between $132,000 and $144,000 annually, as analogous to air traffic controllers for the electrical grid. *Id.* According to the court, the defendant was not subject to the CMWO, because its business "requires relatively high-skilled employees and [the defendant] is not a vendor with which other firms contract." *Id.* at *5. In contrast, customer service representatives do not require substantial skill or training, and they receive much less compensation than employees that manage the electrical grid. Moreover, unlike the defendant in *Cartier*, SEI is a vendor with which multiple firms contract. Am. Compl. ¶¶ 18, 24.

Defendants primarily argue that because customer support is not listed as an example occupation, the drafters of the CMWO did not intend to include it as one. Defs.' Reply 5 ("[I]f the Colorado legislature had intended the Wage Order to apply to providers of customer service functions, it would have said so."). However, this argument is contrary to the Court's holding above, and the holdings of other courts, that the list of occupations in 7 Colo. Code Regs § 1103-1:2(B) is not exhaustive. *See Cartier*, 2015 WL 3581346, at *5; *see generally Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1160–61 (10th Cir. 2016) (holding that although exempt under a separate provision, truck drivers are part of one of the industries subject to the CMWO). It is clear that the drafters of the CMWO did not intend to list every covered occupation. The Court holds that customer service is an occupation that the drafters did not list, but intended the CMWO to cover.

Defendants support their position by citing to *Boldozier v. American Family Mutual Insurance Company*, 375 F. Supp. 2d 1089 (D. Colo. 2005). Defs.' Mot. 6. In that case, the court held that the CMWO does not cover the insurance industry. *Boldozier*, 375 F. Supp. 2d at 1091–92.

According to Defendants, the court so held because the drafters of the CMWO did not expressly include the insurance industry. Defs.' Mot. 6. Although the court in *Boldozier* based its ruling in part on the CMWO's failure to explicitly list insurance as one of the four covered industries, the court also relied heavily on an advisory bulletin and hearing testimony that indicated the Division of Labor considered, and rejected, including the insurance industry. 375 F. Supp. 2d at 1091–92. Here, in contrast, Defendants have cited to no evidence that the drafters specifically determined not to include customer support companies as part of the commercial support service industry. Therefore, the Court does not find *Boldozier* persuasive to the present case. Because the Court holds that SEI is a commercial support service company, the Court need not address Plaintiff's alternative argument that SEI is in the retail and service industry.

## CONCLUSION

In sum, the Court finds that, as currently pleaded, SEI provides "services to other commercial firms through the use of service employees who perform" relatively unskilled work that companies often outsource to vendors. 7 Colo. Code Regs. § 1103-1:2(B). Accordingly, the Court recommends that Defendants' Partial Motion to Dismiss Plaintiff's Colorado State Law Claims in First Amended Complaint [filed January 26, 2017; ECF No. 27] be **denied**.

Entered and dated at Denver, Colorado, this 20th day of March, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge